**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 18, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JIMMIE WELLMON,

     Petitioner - Appellant,

v.

COLORADO DEPARTMENT OF
CORRECTIONS; THE ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

     Respondents - Appellees.

No. 19-1002

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CV-02222-WJM)**
_____

John T. Carlson, Ridley, McGreevy & Winocur, P.C., Denver, Colorado, for Petitioner-Appellant.

Christine Brady, Senior Assistant Attorney General (Philip J. Weiser, Attorney General, with her on the brief), Denver, Colorado, for Respondents-Appellees.
_____

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

Although Congress has given us the ability to review state criminal convictions, our power to grant a petitioner relief is limited to correcting extreme

malfunctions in the state criminal justice systems.  In so doing, we review a state court's decision for reasonableness and focus on what the state court knew and did when it made its decision.  And under 28 U.S.C. § 2254(d), we make our reasonableness determination considering the arguments the petitioner raised in state court.

In this appeal, Petitioner Jimmie Wellmon seeks to set aside his state court convictions for attempted first-degree murder, assault, menacing, and witness tampering.  We granted a certificate of appealability so Petitioner could appeal whether he validly waived his right to counsel and, if so, whether the state trial judge reasonably rejected his pretrial motion to retract his waiver.  The federal district court rejected Petitioner's claims and dismissed his petition.  Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm.

I.

Petitioner brutally assaulted a female victim in a Denver hotel room. After a trial in which he represented himself, a Colorado jury convicted Petitioner of attempted first-degree murder, assault, menacing, and witness tampering.  The state trial court sentenced Petitioner to seventy years' incarceration.  The Colorado Court of Appeals ("CCA") affirmed Petitioner's convictions on direct appeal.  Both the Colorado Supreme Court and the United States Supreme Court denied certiorari.  Petitioner then filed this civil action in the District of Colorado, collaterally attacking his state court conviction.

## II.

The standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") guide our review of 28 U.S.C. § 2254 applications. We may grant a petitioner relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). "Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." Washington v. Roberts, 846 F.3d 1283, 1286–87 (10th Cir. 2017). "Only Supreme Court law announced by the time of the state-court decision on the merits qualifies as 'clearly established law.'" Id. at 1287. If the state court comes to a conclusion "opposite to that reached by the Supreme Court on a question of law" or "decides a case differently than the Court has . . . on materially indistinguishable facts," such a decision is "contrary to" clearly established law. Id. And if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case," the state court's decision is an "unreasonable application" of Supreme Court law. Id. (alteration in original).

## III.

Our resolution of Section 2254 claims "is highly dependent on the standard of review required by AEDPA"—which limits our role in reviewing state court judgments. Washington, 846 F.3d at 1287. To determine whether Petitioner is

3

entitled to relief, we must analyze what occurred at trial and on appeal, determine what standard the CCA applied, analyze whether that standard conflicted with clearly established United States Supreme Court precedent, and finally decide whether the court unreasonably applied that standard.

## A.

The state trial court appointed the Office of the Colorado State Public Defender to represent Petitioner. Petitioner quickly sought to dismiss his assigned public defender. Petitioner alleged the public defender had ties with the witnesses in the case and questioned his counsel's ability to be objective about potentially exculpatory evidence. Petitioner also challenged his counsel's "ability to significantly produce effective work product, and to provide Defendant with effective assistance of counsel in the preparatory phase of this proceeding." Petitioner said he had "nothing but confrontations" with his public defender and that the public defender did not represent him vigorously or with zeal. Petitioner submitted a list of grievances with his motion, including complaints that the public defender ignored calls from Petitioner and his friends and family. The trial court held a hearing on the issue and carefully advised Petitioner of his right to counsel. On the record during that hearing, Petitioner unequivocally waived his right. Petitioner then asked the trial court to appoint advisory counsel and an investigator—which it did.

During Petitioner's time as a pro se defendant, he made several phone calls to his former girlfriend, Estelle Allen. But Allen was not just a former girlfriend, she was a witness for the state. The prosecution planned to call Allen to testify that

4

Petitioner assaulted her in a manner similar to the attack at issue. The court revoked Petitioner's phone privileges. Petitioner also recruited Danny Padilla—the resident of an adjoining jail cell—to call Allen. Prosecutors alleged that Padilla sought to influence Allen's testimony at Petitioner's direction. Padilla thus became a witness to the witness tampering charge. By trial, Petitioner married Allen.

Petitioner's relationship with advisory counsel quickly soured. Advisory counsel moved to withdraw. Advisory counsel thought her further participation in the case might undermine the ethical standards of the law and place her "in jeopardy for activities of omission rather than commission." Advisory counsel told the court that her last two court appearances involved "the most blatant examples of the Defendant purposefully trying to mislead the Court." The trial court allowed her to withdraw. Petitioner then asked the court to reappoint the public defender's office. The court at first denied the request, telling Petitioner that he had lied, manipulated, and misbehaved in subtle and clever ways for months. The prosecution asked the court to reconsider its ruling, opining that the investigators contributed to the failed relationship between Petitioner and advisory counsel. The court granted the request and re-appointed the Office of the Colorado State Public Defender. A new deputy public defender entered his appearance.

Seven weeks before the trial date, the public defender told the trial court of a conflict of interest and asked to withdraw. The problem—unnoticed at the time of his appointment—was that the public defender's office also represented Padilla. The public defender explained that he could not interview Padilla, a crucial witness in the

5

case who potentially had exculpatory information, because of the conflict. The public defender also admitted that he and Padilla's deputy public defender exchanged confidential information before learning of the conflict. The public defender asserted Petitioner's constitutional right to conflict-free assistance of counsel and informed the court that the conflict materially limited his ability to represent Petitioner.

In response to the conflict, the prosecution agreed not to call Padilla as a witness and to grant immunity to him if Petitioner called him at trial. The trial court determined that the potential conflict of interest was speculative and ameliorated by the prosecution's agreements, as well as the court's ability to sever the witness tampering counts and try them with different counsel, if necessary.

Petitioner subsequently sought to dismiss his new public defender and appoint alternative defense counsel, while the new public defender moved to withdraw based on irreconcilable differences with Petitioner. When the court asked the public defender why he sought to withdraw, the public defender responded that "there just seems to be a concerted effort to abuse counsel." Specifically, Petitioner made threats against the public defender and an intern in the office. The public defender told the court that "consistently the message from Mr. Wellmon is that he needs to be in control of everything and cannot tolerate counsel making decisions." Petitioner made clear that he did not want to proceed to trial pro se, but he also made clear that he wanted new counsel. The public defender told the court that he could be ready for trial but that his cross-examination of Allen would be restricted because of the conversations between Allen and Padilla. Specifically, the public defender stated, "I

6

don't think it would be appropriate for me to bring up anything related to Danny Padilla and Danny Padilla is on tapes talking to her." He also stated that Padilla was the only impeachment witness if Allen were to deny any conversations between the two occurred. Put simply, the new public defender had confidential information about Padilla he could not share with Petitioner and confidential information about Petitioner that he could not share with Padilla.

The public defender told the court that Petitioner wanted him to call Padilla as a witness but that he believed the potential risk in doing so outweighed any favorable testimony Padilla might offer. The court then told Petitioner that he created the Padilla issue as a result of his misbehavior and improper conduct in violation of a judicial order not to contact witnesses. The court also engaged in the following exchange with Petitioner:

> THE COURT: Well, in any event, what we have here and now is a conflict with Mr. Padilla that was created out of, essentially, thin air by you and a conflict with [the public defender] that was created out of thin air by you. Under these circumstances, it seems to me that as well as the history of this case, which is well documented, it is my view that you either proceed with [the public defender] on September 4th or you proceed pro se, having not only knowingly and willingly on repeated occasions waived your right to counsel expressly but that by your overall action in this case you have in my view, clearly and unequivocally waived your right to counsel. If your conduct in this case is permitted to entitle you to, at this point, alternative defense counsel, it is my view that any defendant at any time could create these conflicts simply by similar type of behavior. Anytime you don't like your public defender, you can directly or indirectly do all sorts of things and, boom, you have manipulated the system and, indeed, taken control of the system, thereby forcing the Court to create—to give you another attorney. If you don't like that attorney, the same thing can happen. The law affords the Court a remedy in this situation, and that is to find that you have, by your conduct and the totality of the circumstances, impliedly waived your right to

7

counsel, and I am prepared to make that ruling, if that's what you want me to do.

THE DEFENDANT: If it's a choice between proceeding with [the public defender] and pro se, it leaves me no choice but to go pro se.

The court then denied the public defender's motion to withdraw and again advised Petitioner of his right to counsel. Following that advisement, and the court's refusal to appoint another advisory counsel, Petitioner stated he would rather represent himself than have the public defender represent him. The court then found Petitioner knowingly, intelligently and voluntarily waived his right to counsel.

The court held another hearing one week before trial and told Petitioner that his failure to participate at trial would not be grounds for a mistrial. Petitioner did not engage with the court at that hearing. He did, however, seek the public defender's reappointment. In support, he said he could not prepare for trial or defend himself adequately. The public defender said he could be prepared to proceed with trial on schedule. The court denied the motion, stating that Petitioner had multiple advisements of his right to counsel and made a strategic, tactical, knowing, and intelligent decision to waive counsel and proceed pro se. The court determined that "any problems he faces regarding the upcoming trial are self-inflicted, and knowingly so."

At trial, Petitioner reiterated his desire for an attorney. The court told him that he chose to be in this predicament and should "just make the best of it." The Court reiterated that Petitioner would not allow anyone to represent him nor did he allow an advisory counsel to assist him. After reviewing all of the motions and transcripts, the

8

court told Petitioner that he had made it impossible for anyone to represent him. Petitioner did not make an opening statement, cross-examine any witnesses, or put on a defense.

After his conviction, the trial court again appointed the same public defender to represent Petitioner at sentencing. The public defender told the court that he should have been appointed before trial. The court disagreed.

## B.

On appeal to the CCA, Petitioner challenged the validity of his waiver of the right to counsel. See Faretta v. California, 422 U.S. 806, 836 (1975) (providing that before a defendant may act pro se, he must first affect a valid waiver of the right to counsel). Petitioner argued that he had the right to conflict-free counsel. He contended that even if the prosecution did not call Padilla, his defense required impeaching Padilla through Allen and that the public defender's possession of confidential information about both Petitioner and Padilla warranted the public defender's removal. Thus, Petitioner asserted his waiver could not be valid if his only options were to represent himself or proceed with conflicted counsel.

The CCA affirmed. It held the trial court properly concluded the asserted conflict of interest did not require the public defender's withdrawal. It based its holding on two facts in the record. First, neither party intended to call Padilla as a witness at trial. And second, the trial court properly concluded that it could sever the witness tampering counts. Thus, because his public defender faced no conflict after

9

the trial court severed the tampering charge, the CCA held Petitioner validly waived counsel.

After the Colorado Supreme Court and the United States Supreme Court denied certiorari, and after the state courts denied postconviction relief, Petitioner filed this habeas action in the federal district court. The district court agreed with the CCA's analysis. The district court found the state court reasonably rejected the conflict claim because the parties agreed not to call Padilla and the trial court agreed to severe the witness tampering charge.

C.

The Sixth Amendment provides that a defendant has the right to "the Assistance of Counsel for his defense." This includes the right to conflict-free counsel. Wood v. Georgia, 450 U.S. 261, 271 (1981). An "'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002). In joint representation cases, the evil "is in what the advocate finds himself compelled to *refrain* from doing." Holloway v. Arkansas, 435 U.S. 475, 490 (1978) (emphasis in original).

Petitioner contends the CCA did not recognize that requiring a defendant to accept representation from a conflicted lawyer is perilous terrain. He argues that no reasonable jurist could conclude that the public defender's eventual repudiation of Padilla as a defense witness or the possible severance of the witness-tampering counts could extinguish the conflict. Petitioner asserts the CCA neglected to address

10

two items: the public defender's self-described constraints on cross-examining Allen and the public defender's stated inability to investigate Padilla. In sum, Petitioner tells us that the public defender was torn between two clients.

But we must assess the reasonableness of the state court's decision and no more. This is because "the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." Greene v. Fisher, 565 U.S. 34, 43 (2011) (internal quotation marks omitted). Given that objective, we limit our review to the record before the state court. Id. at 44. After all, Section 2254 is a "backward-looking" statute that requires an examination of the state court decision at the time it was made, focusing "on what a state court knew and did." Id. And we do not expect state courts to address arguments the parties do not raise. Thus, under Section 2254(d), we review the reasonableness of a state court's decision in light of the arguments the petitioner raised in the state court. See Wrinkles v. Buss, 537 F.3d 804, 817 (7th Cir. 2008) (holding that review under Section 2254 is limited to "arguments that were adjudicated on the merits in state court proceedings" and "arguments that were not procedurally defaulted").

Petitioner argued to the CCA that the remedy of neither side calling Padilla as a witness against Petitioner did not dissipate the conflict because "the public defender would be limited in impeaching Allen in regard to any contacts she had with Padilla." Given the trial court's offer to sever the witness tampering charges, any such testimony would be irrelevant because the public defender would no longer be

11

torn between two clients. For this reason, we conclude that the CCA reached a reasonable conclusion.

Petitioner now argues that the public defender's conflict never dissipated. Even without Padilla testifying, Petitioner claims the public defender suffered from dual loyalties. Petitioner asserts that the ethics rules precluded the public defender from spilling the substance of the confidential information he had obtained into the record. But in state court Petitioner never argued that the substance of the confidential information related to any topic other than witness tampering. At oral argument, Petitioner asked that we imagine Allen told Padilla, "I'm going to lie about my 404(b) testimony." If true, perhaps the public defender would have been limited in impeaching Allen. And if Petitioner had made that argument to the CCA and that court had rejected it, maybe our result today would be different. Indeed, his arguments on appeal certainly have force. But we are not considering this matter on direct appeal from a federal conviction. Petitioner's failure to make those arguments to the CCA sounds the death knell for them.

Petitioner's counsel also opined at oral argument that he is not required to simply parrot the arguments of Petitioner's state-court counsel. Although we agree with counsel in in a broad sense, the context of this case demands that we limit our review to the arguments Petitioner presented and argued to the CCA. Hawkins v. Mullin, 291 F.3d 658, 668 (10th Cir. 2002). Despite the strength of his argument on habeas review that the public defender may have known of communications that exceeded the witness tampering charges, Petitioner did not first present that issue or

12

argument to the CCA. As a result, the CCA's determination that Petitioner validly waived the conflict (and that the conflict was, in fact, extinguished) was not contrary to clearly established United States Supreme Court precedent. And based on Petitioner's argument to the CCA that the public defender would be limited in impeaching Allen her contacts with Padilla and no more, we hold the CCA reasonably concluded that any such testimony would be irrelevant if neither side called Padilla and the court severed the witness tampering charges.

D.

Having concluded that Petitioner validly waived his right to counsel, we now turn to whether the state trial court denied Petitioner's right to counsel when it rejected his pretrial motion to retract the waiver.

Petitioner acknowledges our prior precedents holding that once a defendant exercises his right to defend himself and proceed pro se, "he does not have the absolute right to thereafter withdraw his request for self representation and receive substitute counsel." United States v. Merchant, 992 F.2d 1091, 1095 (10th Cir. 1993). Petitioner, however, asserts that no court has ever refused a post waiver request to reappoint counsel for trial when, as here, a defendant made the request "well before trial began" and counsel did not need a continuance to try the case. Petitioner reasons that because this is the first time a court has forced a defendant to represent himself in trial by denying his "pre-trial, continuance-free motion to

13

withdraw his invocation of <u>Faretta</u>," the CCA violated the Sixth Amendment as an unreasonable application of <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963).[1]

"[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [Supreme Court] cases can supply such law." <u>Marshall v. Rodgers</u>, 569 U.S. 58, 62 (2013) (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). But for this particular claim under Section 2254(d)(1), <u>Gideon</u> is not "clearly established federal law." Clearly established law is not gleaned from "general principles teased from precedent." <u>House v. Hatch</u>, 527 F.3d 1010, 1016 (10th Cir. 2008). Rather, it "consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." <u>Id.</u> In particular, "the Supreme Court must have expressly extended the legal rule to that context." <u>Id.</u>

Petitioner cites no Supreme Court case—indeed, he acknowledges no court has addressed the issue before us—holding that a presumption of prejudice applies when a court refuses to allow a defendant to withdraw his request for self representation and receive substitute counsel before trial and without the need for a continuance. In his opening brief, Petitioner acknowledges only the "broad principles" of <u>Gideon</u> and <u>Faretta</u> and asks us to look to opinions from the lower courts of appeal "to decide whether the ruling under review hewed to the Court's directives and to know what

---

[1] In <u>Gideon</u>, the Supreme Court held that "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." <u>Gideon</u>, 372 U.S. at 344.

14

law is 'clearly established.'" We decline to do so. Cole v. Trammell, 755 F.3d 1142, 1152 (10th Cir. 2014). In determining whether the law is clearly established, we "may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct." Marshall, 569 U.S. at 64. Because Gideon enunciates only broad legal principles that do not reach Petitioner's question, it is not "clearly established federal law" for purposes of this case.

Moreover, in Marshall, the Supreme Court acknowledged that it has never explicitly addressed a criminal defendant's ability to re-assert his right to counsel once he has validly waived it. Id. at 62. Our responsibility in this appeal is not to judge the merits of Colorado's approach or determine which rule the Sixth Amendment in fact requires for post waiver requests of appointment of counsel. We exercise only the power allowed by the statute: to observe that, "in light of the tension between the Sixth Amendment's guarantee of the right to counsel at all critical stages of the criminal process and its concurrent promise of a constitutional right to proceed *without* counsel when [a criminal defendant] voluntarily and intelligently elects to do so" we cannot say that Colorado's "approach is contrary to or an unreasonable application of the general standards established by the Court's assistance-of-counsel cases." Id. at 63 (internal quotation marks and citations omitted) (emphasis and alteration in original).

The threshold determination "that there is no clearly established federal law is analytically dispositive in the § 2254(d)(1) analysis." House, 527 F.3d at 1017.

15

Thus, "without clearly established federal law, a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of the law. Id.

AFFIRMED.