**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRIAN C. STRAUB,

    Petitioner - Appellant,

v.

BARRY GOODRICH, BCCF Warden;
COLORADO ATTORNEY GENERAL,
THE ATTORNEY GENERAL OF THE
STATE OF COLORADO,

    Respondents - Appellees.

No. 19-1319
(D.C. No. 1:14-CV-00076-WJM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

In April 2006 a masked gunman robbed the Coyote Ugly Saloon in Denver.

Petitioner Brian C. Straub, the bar's former general manager, was charged, tried, and

convicted in Colorado state court of Aggravated Robbery and Second-Degree

Kidnapping. At trial, he presented two defense theories, arguing (a) he had an alibi

for the date and time of the crimes; and (b) the police failed to investigate the

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

possibility that someone else, working in concert with the employees on duty, had committed the robbery. He later filed a motion for new trial, presenting additional evidence in support of his alibi theory. The trial court denied the motion.

The Colorado courts subsequently rejected Straub's appellate and post-conviction challenges to his conviction. He then petitioned for federal habeas relief. The federal district court denied habeas relief and denied a certificate of appealability (COA). We previously granted Straub a COA to allow him to appeal whether his trial counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), and whether the prosecutor violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we now affirm.

I.

On appeal from the denial of habeas relief, "we review the district court's legal analysis de novo and its factual findings for clear error." *Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018). "The standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") guide our review of 28 U.S.C. § 2254 applications." *Wellmon v. Colo. Dep't of Corr.*, 952 F.3d 1242, 1245 (10th Cir. 2020). "We may grant a petitioner relief only if the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)).

2

II.

A.

The district court summarized the evidence presented at trial as follows:

At approximately 2:00 p.m. on April 21, 2006, a masked gunman robbed the Coyote Ugly Saloon, a bar in downtown Denver located within the Denver Pavilions mall. Two employees, M.B. and C.B. were present in the bar at the time of the robbery. The robber pointed a gun at C.B.'s head and demanded that M.B. give him the bag containing approximately $15,000 of the bar's cash receipts that M.B. had intended to deposit at the bank that afternoon. Despite the robber's efforts to conceal his identity by wearing a ski mask and using a fake accent, M.B. and C.B. recognized the robber as Applicant [Straub], a former manager of the bar with whom both had worked. M.B. testified that she recognized Applicant's physique, mannerisms, and "familiar presence." C.B. testified that he recognized Applicant by his height and body type, and also because he had heard Applicant use the same fake accent when they worked together. M.B. and C.B. initially thought that Applicant was playing a joke on them. M.B. testified, "I just didn't understand what was going on. Like– felt like I was on Punk'd or something . . . ." M.B. further testified that immediately after the robber left, she was scared, but still thought he might come back and say "Gotcha!" C.B. testified that he was so convinced it was a joke that, even as the robber held a gun to the back of his head, he grabbed straws from the bar and threw them over his shoulder at the person whom he recognized as Applicant. However, after the robber left the bar with the money and did not return, the bar employees realized it was not a hoax and called 911.

A police officer who responded to the scene retrieved a black ski mask that had been discarded on the stairs outside the back entrance to the bar. A surveillance videotape from the interior of the Coyote Ugly showed the robber leaving the bar at 2:02 p.m. Surveillance video footage taken from outside of the Denver Pavilions showed a man matching the robber's description leaving the shopping center with a trash bag at 1:53 p.m., and a police car arriving at the back door of the Coyote Ugly at 2:02 p.m.[1] Applicant could not be positively identified as the robber from the images on the video surveillance tapes.

---

[1] District court's footnote: "As noted by the Colorado Court of Appeals . . . the discrepancies between the time stamps in the video were not conclusively resolved at trial." (internal quotation marks omitted).

Several days after the robbery, Applicant voluntarily provided police investigators with fingerprints and a DNA sample. Applicant was not told that he was a suspect in the robbery and he informed police that he planned to leave the country for a military tour in Iraq.

Applicant's DNA sample matched the DNA taken from inside the ski mask police found outside the bar after the robbery. An arrest warrant was issued and Applicant was arrested in April 2007, after he returned from Iraq.

During the defense case, several witnesses testified in support of Applicant's alibi defense. One witness testified that he and Applicant belonged to a Brazilian martial arts group and, in connection with an annual martial arts event, Applicant was to pick up two visiting masters at [Denver International Airport (DIA)] on April 21, 2006, whose flights arrived at 1:50 p.m. and 2:00 p.m. Another witness testified that he and Applicant were running errands together in Denver on April 21 and then went to DIA to pick up the masters. In response to defense counsel's query about what time the two men drove to DIA, the witness responded: "I know the no-later-than time was 2 o'clock to be there to pick them up." An additional witness testified that Applicant met him at the DIA baggage claim area on the afternoon of April 21 and that his flight was "on time."

Applicant also testified at trial. He told the police during his initial interview that he went to DIA at approximately 1:30 p.m. to pick up the Brazilian martial arts masters. At trial, he stated that he arrived at DIA "around 2:00 o'clock" and that one of the visiting masters was waiting for him when he arrived.

During the prosecution's rebuttal case, a detective testified that because he did not find a vehicle registered to Applicant in the Colorado motor vehicle registration database, he was unable to use the DIA license plate index to verify the time Applicant arrived at DIA on the day of the robbery. The detective further testified that the drive from downtown Denver to DIA . . . takes approximately 25-27 minutes.

R.C., Applicant's then housemate and one of the "alternate suspects" identified by the defense, testified for the prosecution that he drove to Houston on the day of the robbery; that Applicant owned a handgun similar to the one he saw the robber[] carrying on the video surveillance tape from inside the bar; and, that he, Applicant, M.B. and C.B. were all friends. Applicant also testified that R.C. left for Texas the morning of the robbery. R.C. is slightly taller and of broader build than the Applicant.

4

The prosecutor argued in closing that the evidence showed beyond a reasonable doubt Applicant was the robber. Defense counsel argued in closing that Applicant was framed by M.B., C.B.[,] and R.C. and that "the evidence is clearly uncontroverted that [Applicant] was at DIA when it happened." In rebuttal, the prosecution contended that there was no credible evidence to support Applicant's alternate suspect theory, and that "[t]here was plenty of time for the defendant to do the crime and get to the airport."

R., Vol. II at 514-18 (record citations omitted).

B.

After his conviction, Straub filed a motion for a new trial based on newly discovered evidence. The new evidence included evidence from a DIA license plate index showing that his license plate had been captured by a DIA security camera upon his arrival there at 2:31 p.m. That time was consistent with the Notice of Affirmative Defense of Alibi filed by Straub's pretrial counsel, which stated that Straub "arrived at DIA at around 1430 hours." R., Vol. II at 163. But it was not consistent with his counsel's representation at trial that Straub was at DIA while the robbery was in progress. Nor was it consistent with the alibi testimony at trial, including Straub's, that placed him at DIA at approximately 2:00 p.m.

In his new-trial motion, Straub argued his new evidence, which included affidavits concerning driving times to DIA from downtown Denver, showed it would have been impossible for him to have committed the crimes, left the bar at 2:02 p.m., and then driven to DIA by 2:31. The trial court denied the motion without a hearing, and Straub appealed to the Colorado Court of Appeals (CCA). The CCA rejected the

5

claim, determining that Straub had failed to show due diligence in discovering the new evidence.

In a split decision, the Colorado Supreme Court denied certiorari. Two justices would have granted certiorari, *inter alia*, on the issue of "[w]hether the trial court abused its discretion in denying the petitioner's motion for a new trial based on newly discovered evidence supporting his alibi defense." R., Vol. I at 61.

Straub then filed an application for post-conviction relief under Colo. R. Crim. P. 35(c). In this application he raised two further claims concerning the license-plate evidence: that his trial counsel had ineffectively failed to develop and present the evidence in violation of *Strickland*, and that the government had improperly suppressed it under *Brady*. The CCA affirmed the trial court decision rejecting both those claims. The Colorado Supreme Court denied certiorari. Again, two justices dissented from the denial.

On habeas review, the district court concluded that the CCA's determinations of the *Strickland* and *Brady* claims did not represent an unreasonable application of clearly established federal law.

### III.

### A.

To establish a *Strickland* claim, the defendant must show both that (1) his "counsel's performance was deficient"; that is, "that counsel made errors so serious that [he] was not functioning as the counsel guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense," *Strickland*,

6

466 U.S. at 687 (internal quotation marks omitted).[2] Prejudice is established by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The CCA correctly recited this standard in its decision. It then determined that Straub had failed to show sufficient prejudice to establish his *Strickland* claim concerning the DIA evidence because (1) presenting the jury with "[t]he DIA index evidence show[ing] Straub's vehicle arriving at DIA at 2:31 p.m." rather than 2:00 p.m. as he had claimed "would ultimately have undercut his alibi and impeached his credibility," R., Vol. II at 286-87; (2) although Straub's trial testimony that he was at DIA at the time of the robbery supported a "true alibi" defense, which "places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it *impossible* for him to be the guilty party," evidence that his vehicle arrived at DIA at 2:31 p.m., "between twenty-nine and thirty-eight minutes after the suspect left Coyote Ugly, . . . fails to support—and indeed undermines—a true alibi defense," *id.* at 287 (internal quotation marks omitted); and (3) "[e]ven assuming . . . that the perpetrator of the robbery left Coyote Ugly at [2:02 p.m.], it is still plausible that Straub could have driven hurriedly from Coyote Ugly and arrived at DIA . . . by 2:31 p.m."; the time frame involved is thus less relevant

---

[2] Straub devotes a significant portion of his opening brief to arguing that his counsel's performance was deficient. But the CCA reached its decision based on lack of prejudice, and "[w]e need not analyze both the performance and prejudice prongs of the *Strickland* test if defendant fails to make a sufficient showing of one," *United States v. Hollis*, 552 F.3d 1191, 1194 (10th Cir. 2009) (internal quotation marks omitted). We therefore need not consider his performance-based arguments.

7

than if Straub's vehicle had "been shown entering DIA just 10 minutes after he allegedly fled the scene of the robbery," *id.* at 288 (internal quotation marks omitted). The CCA concluded that the district court "did not err by summarily denying Straub's claim without a hearing." *Id.*

Picking up on this last statement, Straub contends that the state *district* court misapplied the *Strickland* standard in summarily denying his claim, and that the CCA perpetuated the error by affirming that decision and adopting its reasoning. But the CCA conducted its own full *Strickland* analysis. We therefore review the CCA's decision, the last reasoned state court decision in this case, and not the decision of the state district court. *Cf. Wilson v. Sellers*, 138 S. Ct. 1188, 1194-95 (2018) (explaining that habeas courts may "look through" *unexplained* state appellate decisions to an earlier, reasoned decision).

Straub next complains that the CCA improperly required him to establish that the evidence would have exonerated him, rather than merely show a reasonable probability of a different outcome. As noted, the CCA began its analysis by correctly reciting and defining *Strickland*'s prejudice standard. But Straub points to the CCA's later statement that it was "unpersuaded that the DIA index evidence *would have had an exculpatory rather than inculpatory effect*." R., Vol. II at 288 (emphasis added). He argues that by using this language the CCA impermissibly diverged from the "reasonable probability" standard. Viewed in the light of its entire analysis, however, the CCA's statement did not apply an improper constitutional standard but was simply a permissible commentary on the lack of value of the new evidence.

8

*Cf. Harmon v. Sharp*, 936 F.3d 1044, 1064-66 (10th Cir. 2019) (state court's statement that the defendant must show "that the outcome of the trial *would have been different* but for the errors" was not an unreasonable application of *Strickland* where the state court "properly enunciated [the correct prejudice] standard on several occasions" and the "substance of [its] analysis" indicated it properly applied *Strickland* (emphasis omitted in part)).

Straub argues more broadly that the CCA's use of the word "exculpatory" impermissibly required him to prove his actual innocence or to establish prejudice by a preponderance of the evidence rather than a reasonable probability. We disagree. Taken in context, "exculpatory" refers to the favorable character of the evidence for Straub's alibi defense. *See Evidence*, Black's Law Dictionary (11th ed. 2019) (defining "exculpatory evidence" as "[e]vidence *tending to* establish a criminal defendant's innocence" (emphasis added)). Certainly, Straub sought to use the DIA evidence in an exculpatory fashion by showing that he could not have committed the crimes because he was elsewhere at the time.

Straub also complains that the CCA found the new evidence could only meet the *Strickland* prejudice standard if "he was *literally* at the airport at the time of the robbery." Aplt. Opening Br. at 7. But the CCA did not require Straub to show that he was at DIA at the time of the robbery. It acknowledged that if his arrival time at DIA had been so soon *after* the robbery that it was entirely implausible for him to be the guilty party, such evidence might have led to a different result, satisfying *Strickland*'s prejudice standard.

9

The CCA also pointed out that in his own trial testimony, Straub claimed that at the time of the 2:00 p.m. robbery he was at the airport, not driving there and still a half-hour away. Straub also presented testimony from other witnesses to establish his presence at DIA at the time of the robbery. Had his counsel uncovered and presented the DIA index evidence, it would have contradicted all the other evidence Straub presented attempting to show he was at DIA *during* the robbery.

Straub suggests this problem could have been avoided if his trial counsel had just done a better job. He relies heavily on counsel's opening statement that placed him at DIA at the precise time of the robbery. He complains counsel's statement was unsupported and constitutionally ineffective.[3] Granted, the testimony establishing a 2:00 time for Straub's presence at DIA was imprecise. Had the DIA evidence been available and presented at trial counsel could perhaps have tailored his argument to more closely fit the evidence of a 2:31 p.m. arrival time. But we cannot ignore the fact—the CCA certainly did not—that Straub hitched his credibility *through his own testimony under oath* to a claim that he was at DIA at approximately 2:00 p.m. *See* Trial Tr., Apr. 30, 2008 (afternoon) at 33. He cannot simply be allowed to change his story to match the new evidence. Evidence that he arrived at DIA a full half-hour later, making it possible for him to have committed the robbery before driving to DIA, would have undermined both Straub's credibility and his own trial testimony, in

---

[3] Straub argues that his trial counsel chose to "simply claim [Straub] was at the airport at the exact time of the robbery without any evidence to back the statement up." Aplt. Opening Br. at 11. On the contrary, counsel presented evidence to support that theory in the form of testimony from several witnesses, including Straub.

10

favor of a weaker and more problematic alibi theory. In sum, the CCA's conclusion that the DIA evidence was insufficiently exculpatory, under the circumstances, to meet *Strickland*'s "reasonable probability" prejudice standard, was not unreasonable under § 2254(d). We must therefore deny habeas relief concerning this claim.

B.

To establish a *Brady* claim, "the defendant must prove that the prosecution suppressed evidence, the evidence was favorable to the defense, and the evidence was material." *United States v. Headman*, 594 F.3d 1179, 1183 (10th Cir. 2010) (internal quotation marks omitted). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted).

The CCA correctly stated this standard. It then determined Straub had failed to establish that the allegedly withheld evidence met *Brady*'s materiality requirement. The CCA noted that "materiality" under *Brady* is virtually identical to "prejudice" under *Strickland*. *See Snow v. Sirmons*, 474 F.3d 693, 725 n.34 (10th Cir. 2007) (stating *Brady*'s materiality and *Strickland*'s prejudice standards are "virtually identical"). It therefore adopted its previous *Strickland* prejudice analysis concerning the DIA index and concluded that Straub's allegations also failed *Brady*'s materiality requirement. Straub fails to show the CCA unreasonably applied clearly established federal law in reaching this conclusion. We therefore affirm the denial of habeas relief.

11

## C.

Straub also argues the district court should have provided him with an evidentiary hearing concerning his claims. Our COA grant included the evidentiary hearing issue. But Straub has failed to show his entitlement to a hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding "that review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). We therefore deny relief on this issue.

## IV.

The district court's judgment is affirmed. Having reviewed Straub's request for a COA on his remaining claims we now deny a COA as to those claims.

Entered for the Court


Joel M. Carson III
Circuit Judge