**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**February 7, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

JOHN F. FRANCIS,

    Petitioner - Appellant,

v.

CHANDLER CHEEKS, Lansing
Correctional Facility Warden;
DEREK SCHMIDT, Attorney
General of the State of Kansas,

    Respondents - Appellees.

No. 22-3165
(D.C. No. 5:21-CV-03079-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **KELLY**, and **LUCERO**, Circuit Judges.
_____

This appeal involves a habeas action, which arose from the killing of

Mr. John Francis's cousin. For that killing, Mr. Clem Hollingsworth IV

was charged. Believing that Mr. Hollingsworth was guilty, Mr. Francis

allegedly tried to obtain bond for Mr. Hollingsworth in order to murder

---

[*]    Oral argument would not help us decide the appeal, so we have
decided the appeal based on the record and the parties' briefs. _See_ Fed. R.
App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. _See_ Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

him. This alleged effort didn't succeed, but Mr. Hollingsworth later obtained release when his mother bonded him out. The next day, Mr. Hollingsworth was shot to death. For this shooting, the trial court convicted Mr. Francis of first-degree murder.

After exhausting remedies in state court, Mr. Francis sought habeas relief in federal district court. The district court denied habeas relief, and Mr. Hollingsworth appeals. We address two main issues:

1.    The materiality of information undermining the credibility of a bondsman who had testified against Mr. Francis

2.    Actual innocence of Mr. Hollingsworth

**1.    Nondisclosure of information about the bondsman's credibility doesn't entitle Mr. Francis to habeas relief.**

In the habeas petition, Mr. Francis claimed that the prosecution had withheld exculpatory information about a bondsman who testified at the trial.

**a.    We defer to the state supreme court's decision as long as the court reasonably applied precedent of the United States Supreme Court.**

The state supreme court rejected this claim, and Mr. Francis unsuccessfully renewed this claim in his habeas petition. We conduct de novo review over the district court's ruling. *Menzies v. Powell*, 52 F.4th 1178, 1195 (10th Cir. 2022), *cert. denied*, 144 S. Ct. 122 (2023). In conducting that review, we apply the same standard that governed in federal district court. *Id.* There the court had to apply a deferential

2

standard before considering the merits. *Id.* Under this deferential standard, the district court couldn't grant relief on the merits unless the state supreme court had

- acted contrary to Supreme Court precedent,

- unreasonably applied such precedent, or

- unreasonably determined the facts.

28 U.S.C. § 2254(d)(1)–(2).

> **b.      The state supreme court didn't unreasonably apply Supreme Court precedent.**

In his opening brief, Mr. Francis argues that the state supreme court unreasonably applied a test created by the United States Supreme Court for evidence undermining the credibility of a prosecution witness. For this argument, Mr. Francis claims that the prosecution withheld evidence that the bondsman had post-traumatic-stress disorder (PTSD) and had expressed confusion about some matters that he was expected to testify about.

When the nondisclosed evidence is material, the Supreme Court has said that nondisclosure violates the defendant's right to due process. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). When the state supreme court issued its decision, the United States Supreme Court had regarded evidence as *material* if disclosure would have created a reasonable probability of a different result. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

We consider not only this test but also the federal district court's standard for evaluating the state supreme court's application of the test. This standard prevents habeas relief if the state supreme court's application of the test was reasonable. 28 U.S.C. § 2254(d)(1). The court's application of the test was reasonable unless the state supreme court made an error so "well understood and comprehended in existing law" that it lay "beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). In considering the possibility of fair-minded disagreement, we give considerable leeway to the state supreme court in light of the generality of the Supreme Court's standard for materiality. *See Andrew v. White*, 62 F.4th 1299, 1330 (10th Cir. 2023) (stating that we provide "substantial deference" to the state appellate court in light of the generality of the Supreme Court's "disclosure rule . . . announced in [*Brady v. Maryland*, 373 U.S. 83 (1963)]").

Finally, we consider the reasonableness of the state supreme court's reasoning based on the arguments that Mr. Francis had presented. *See Menzies v. Powell*, 52 F.4th 1178, 1201 (10th Cir. 2022) ("We review the reasonableness of the Utah Supreme Court's decision based on the arguments presented."), *cert. denied*, 144 S. Ct. 122 (2023); *Wellman v. Colo. Dep't of Corr.*, 952 F.3d 1242, 1249 (10th Cir. 2020) ("[U]nder Section 2254(d), we review the reasonableness of the state court's decision in light of the arguments the petitioner raised in the state court.").

4

To the state supreme court, Mr. Francis asserted that the PTSD and confusion were material because the bondsman was an important witness:

> The evidence that the State's witness, [the bondsman] told Det. Daniels that he had post-traumatic stress and was confusing the issues in this case was material impeachment information which would have affected the outcome of the trial. Evidence at trial proved that [the bondsman's] testimony was integral to the State's case. The failure of the State to disclose the information, which was explicitly requested by the defense, was a direct violation of the *Brady* rule and its progeny and K.S.A. § 22-3212. The State's discovery violation irreparably prejudiced the Defendant and denied him a fair trial. The trial court abused its discretion in denying the Defendant's motion to dismiss, or alternatively, grant him a new trial due to the discovery violations.

Appellant's Opening Br. at 82–83, No. 04-92087-5 (Kan. 2005), *available at* 2005 WL 2395690. But Mr. Francis didn't say why PTSD or confusion would have materially undermined the bondsman's credibility.

Given the lack of discussion about the importance of the PTSD or confusion, the state supreme court acted reasonably in concluding that the new evidence hadn't satisfied the United States Supreme Court's test for materiality. The bondsman testified at trial that

- Mr. Francis and others had tried to get a bond for Mr. Hollingsworth,

- the group had said that Mr. Hollingsworth would be out only a few days,

- Mr. Francis had said that his cousin had been killed by Mr. Hollingsworth, and

- someone in the group had said that the bondsman would be off the bond as soon as Mr. Hollingsworth's body was found.

5

Shortly before the bondsman testified at trial, however, he had expressed concern to the lead detective. The bondsman said that he had PTSD and his own son had been murdered, creating confusion "on a couple of issues." *State v. Francis*, 145 P.3d 48, 70 (Kan. 2006). The prosecution didn't disclose that statement, and Mr. Francis claims that the Constitution entitled him to the information before the bondsman testified.

The state supreme court disagreed. The court acknowledged that the bondsman was a "key witness" who gave "important testimony." *Id.* at 71. But the court concluded that the PTSD and confusion wouldn't have created a reasonable probability of a different result. *Id.* at 72. For this conclusion, the court reasoned that

- the bondsman was unlikely to confuse his son's murder with the unusual solicitation of a bond for someone who the group wanted dead and

- the bondsman's account was consistent during the investigation, the preliminary hearing, and the trial.

*Id.*

Perhaps the court could have applied the facts differently and arrived at a different result. After all, the bondsman was undoubtedly a key witness for the prosecution. But the state supreme court acknowledged the importance of the bondsman's testimony. It was the peculiarity of the situation that magnified the testimony: Mr. Francis and others approached the bondsman to issue a bond for Mr. Hollingsworth, but the group

6

obviously hated Mr. Hollingsworth. According to the bondsman, Mr. Francis said that a close relative had been killed by Mr. Hollingsworth, calling him a "mother******." Then, the group assured the bondsman that his risk would end in just a few days when Mr. Hollingsworth's body was found. The state supreme court reasonably concluded that the bondsman was unlikely to confuse these circumstances with those surrounding his son's murder.

Granted, the bondsman said shortly before testifying that he was experiencing some confusion on "a couple of issues" that the prosecution wanted him to testify about. In analyzing the bondsman's confusion, however, the state supreme court needed to address an ambiguous record: No one ever asked the bondsman what he was confused about. So the court needed to assess probabilities and concluded that the confusion was unlikely to involve the critical parts of the bondsman's account. Though jurists might weigh the probabilities differently, the state supreme court's analysis was reasonable. *See McCray v. Capra*, 45 F.4th 634, 644–45 (2d Cir. 2022).[1] So the district court couldn't grant habeas relief unless the

---

[1]    There the petitioner was convicted of rape, and the central issue was whether the sex had been consensual. *McCray*, 45 F.4th at 637–38. The petitioner sought habeas relief based in part on the prosecution's withholding of prior assessments of the victim's mental health. *Id.* at 640–41, 644–45. The state appellate court rejected the claim, and the Second Circuit held that the state court could reasonably view the assessments as immaterial because they were ambiguous as to the victim's ability to remember whether the sex had been consensual. *Id.* at 644–45.

state court had (1) acted contrary to Supreme Court precedent or (2) unreasonably determined the facts. *See* p. 3, above.

        **c.**      **We decline to consider whether the state supreme court acted contrary to a precedent by the United States Supreme Court or unreasonably determined the facts.**

In his reply brief, Mr. Francis argues that the state supreme court acted contrary to precedent from the United States Supreme Court and unreasonably determined the facts. For two reasons, Mr. Francis waited too long to make these arguments.

First, Mr. Francis failed to preserve these arguments by failing to raise them in federal district court. *Menzies v. Powell*, 52 F.4th 1178, 1201 (10th Cir. 2022), *cert. denied*, 144 S. Ct. 122 (2023). If Mr. Francis had urged plain error, we could address the arguments under the plain-error standard. *See Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015). But Mr. Francis didn't urge plain error. So we consider the arguments waived. *Id.*[2]

---

[2]    Our precedents are inconsistent in discussing preservation in cases involving habeas review. We sometimes treat unpreserved issues as waived, sometimes as forfeited. *See Harmon v. Sharp*, 936 F.3d 1044, 1085–91 (10th Cir. 2019) (Holmes, J., concurring) (discussing this inconsistency in our case law). The difference here is academic. If the issue involves forfeiture rather than waiver, we could consider the issue under the plain-error standard. *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007). But Mr. Francis has not argued plain error, so we would not entertain the issue even if it had been forfeited rather than waived. *See Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015).

Second, in his appellate briefing, Mr. Francis waited until his reply brief to make these arguments. The reply brief was too late for these arguments, resulting in a second waiver.

For both reasons, we consider the arguments waived.

## 2. Mr. Francis hasn't shown actual innocence.

A habeas petitioner must generally follow state procedural requirements before raising the same underlying claims in a habeas petition. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). The failure to satisfy these requirements can generally trigger a procedural default, preventing habeas relief. *Davila v. Davis*, 582 U.S. 521, 527 (2017). An exception exists when the petitioner demonstrates actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

The district court regarded five of the habeas claims as procedurally defaulted:

1. refusal to consider the jury's question about an instruction

2. refusal to instruct the jury on the need to show more than mere association or presence with someone who committed the crime

3. introduction of evidence involving ownership of a gun and ammunition

4. permission for the lead detective to sit near the prosecution table

5. presence of cumulative errors

To avoid the procedural defaults, Mr. Francis has invoked the exception for actual innocence. The district court concluded that Mr. Francis hadn't satisfied his burden, and we engage in de novo review. *Taylor v. Powell*, 7 F.4th 920, 932 (10th Cir. 2021). On de novo review, we agree with the district court.

For actual innocence, the petitioner must present evidence that

- is new and reliable and

- shows "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."

*Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Trying to satisfy this exception, Mr. Francis relies on three categories of new evidence:

1.    evidence undermining the credibility of Mr. Hollingsworth's mother,

2.    an affidavit from Mr. Corey Shannon, a friend of both Mr. Francis and Mr. Hollingworth, and

3.    evidence about the bondsman's PTSD.

In our view, the combination of new evidence doesn't make an acquittal more likely than not.

Mr. Hollingsworth's mother testified that she was driving her son when the killing took place. According to the mother, Mr. Hollingsworth was in the back seat of her car, another car pulled next to her, and multiple individuals started shooting into her car. She said that she saw Mr. Francis in the front seat of the shooters' car.

At trial, Mr. Francis's attorney thoroughly cross-examined the mother, eliciting admissions that

- Mr. Francis had been to her house only once,

- she had given the police the names of two other individuals who might want to harm Mr. Hollingsworth,

- someone had been watching Mr. Hollingsworth,

- the mother thought that she had ducked when the gunfire started,

- she didn't actually see a gun,

- she had said after the shooting that she was not certain and had "just suspected" that it was Mr. Francis in the car, Appellant's Supp. App. Vol. IV at 248–49, and

- she had told the police that she wished that she "had seen for sure," *id.* at 252.

Despite the existing impeachment of Mr. Hollingsworth's mother, Mr. Francis refers to new evidence undermining her credibility. The new evidence consists of an affidavit from a private investigator. In the affidavit, the investigator said that he had spoken to someone (Reggie Gant), who in turn had said that the mother had tried to convince him to confess to the murder. Mr. Francis's appellate argument about this evidence consists of one sentence: "Additionally, the district court's failure to analyze Gant's affidavit is reversible error because this Court held in [*Fontenot v. Crow*, 4 F.4th 982 (10th Cir. 2021)] that all newly

presented evidence must be analyzed in the gateway innocence calculus."
Appellant's Opening Br. at 29.

Though Mr. Francis points out that the district court didn't discuss this evidence, he doesn't say why it is important. Generally, double-hearsay adds little to a claim of actual innocence. *See Thomas v. Williams*, 822 F.3d 378, 387 (7th Cir. 2016) (stating that "hearsay within hearsay" had "little probative value" in establishing actual innocence). Even if we were to accept what Mr. Gant had purportedly said, it would have added little to the existing impeachment. Mr. Hollingsworth's mother admitted that

- she had given the police the names of two other individuals who might have wanted to harm her son and

- she still thought that these two individuals had been involved in the murder.

Appellant's Supp. App. Vol. IV at 246.

Mr. Francis also points to three affidavits involving Mr. Corey Shannon. In the affidavits, Mr. Shannon said that (1) Mr. Francis had nothing to do with the murder of Mr. Hollingsworth and (2) Mr. Hollingsworth's mother acknowledged in a phone call that she hadn't seen the fatal shots. The district court regarded this evidence as insufficient for actual innocence.

So do we. The mother never said that she had seen the fatal shots. She instead said that she had seen Mr. Francis, along with others, shooting

12

from the nearby car. And Mr. Shannon didn't say how he would have known who had shot Mr. Hollingsworth. At the time of the shooting, Mr. Shannon was in a Missouri prison.

Lastly, Mr. Francis points to new evidence about the bondsman's confusion and PTSD. We've concluded above that the state supreme court reasonably regarded that evidence as immaterial. For similar reasons, we conclude that this evidence added little to Mr. Francis's claim of actual innocence.

Mr. Francis argues that the PTSD and confusion would have undermined the bondsman's credibility. Even if Mr. Francis were correct, the evidence wouldn't have shown that Mr. Francis was actually innocent of the crime. *See Stafford v. Saffle*, 34 F.3d 1557, 1562 (10th Cir. 1994) (stating that the new evidence was "only impeachment evidence, rather than evidence of actual innocence").

Regardless of whether the new evidence is viewed separately or together, Mr. Francis failed to show a likelihood that no jury would have found him guilty.[3] So we reject his claim of actual innocence.

\* \* \*

---

[3]    In his reply brief, Mr. Francis also points to new evidence that the bondsman later recanted his trial testimony. But Mr. Francis failed to make this argument in district court or in his opening appellate brief. The reply brief was too late. *See* pp. 8–9, above.

We affirm the denial of habeas relief.[4]

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

[4]     Mr. Francis moves for judicial notice and a certificate of appealability on other issues. The requested judicial notice involves materials from the state-court record. The government doesn't object, and we grant the motion. But we deny a certificate of appealability on all issues other than those discussed above.